IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02193-SKC-TPO

KELIN CLEMENT,

      Plaintiff,

v.

JEFFERSON COUNTY SCHOOL DISTRICT R-1,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Timothy P. O'Hara, United States Magistrate Judge.**

      Before the Court is Defendant Jefferson County School District R-1's (JeffCo's) Motion to Dismiss [ECF 19], which was referred to the undersigned for Recommendation by U.S. District Judge S. Kato Crews. ECF 27. Plaintiff responded in opposition,[1] ECF 29, and Defendant replied, ECF 30. The Court finds that oral argument or further briefing would not materially assist in issuing this Recommendation. Having considered the Parties' briefing, the relevant laws, and the case file, the Court Recommends that Defendant's Motion to Dismiss [ECF 19] be **denied.**

---

[1] Plaintiff did not initially file a Response. The Court convened a Status Conference with the Parties and *sua sponte* afforded Plaintiff, who proceeds pro se, an extension to file a response or seek leave to amend the Complaint. *See* ECF 28.

## BACKGROUND[2]

Plaintiff, Kelin Clement, is a 40-year-old woman who identifies as a lesbian and is an experienced girls' basketball coach. ECF 1 ¶¶ 5; 23 25; 27-28. She grew up in Parker, Colorado, where she was a successful high school basketball player at Ponderosa High School. *Id.* ¶ 23. She continued her path as a player at the collegiate level at two different schools in California. *Id.* ¶ 24. After college, she remained in California coaching for "various youth basketball programs, including Stanford Girls' Basketball Camp and CSUEB Pioneers Sports Camps." *Id.* ¶ 25. Plaintiff also has worked as a program manager for a non-profit organization for the elderly and as a web/graphic designer and developer. *Id.* ¶ 26.

On or around October 2, 2020, Defendant JeffCo hired Plaintiff, through former Athletic Director, Ryan Scherling, as the Head Varsity Coach for Bear Creek High School's (BCHS) girls' basketball team. *Id.* ¶ 29. Plaintiff was "one of two other female head coaches and the only openly LGBT coach at BCHS." *Id.* ¶ 33.

Plaintiff entered a girls' basketball program in distress. The prior coach of the BCHS's girls' basketball team, Mr. Jake Marshall, had a *1-22 record*, the program's worst performance in sixteen years. *Id.* ¶ 30-31. Plaintiff alleges that the school offered Mr. Marshall, whom she identifies as a heterosexual man, to renew his coaching contract despite the previous season's performance. Instead, he resigned, leading to Plaintiff's hire. *Id.* ¶ 31.

Throughout her first year of coaching at BCHS, Plaintiff improved the team's record to 5-

---

[2] The factual allegations are taken from Plaintiff's Complaint [ECF 1] and are based on the time of filing on August 8, 2024.

9[3] and raised the team's state ranking. *Id.* ¶ 32. Plaintiff also initiated efforts to revamp the girls' basketball program, including registering and seeking tax exemption for the Lady Bears Basketball Booster Club as a 501(c)(3) non-profit. *Id.* ¶ 35.

On June 7, 2021, BCHS named a new Athletic Director, Mr. Zachary Morris. *Id.* ¶ 37. Under Mr. Morris's direct supervision, Plaintiff alleges that she was subject to sex discrimination both because she is a woman and identifies as a lesbian, ultimately leading to her termination. *Id.* ¶¶ 9-12; 22.

Plaintiff alleges that she was treated differently than other coaches and that Mr. Morris often ignored her emails and requests, particularly in regard to scheduling gym time for the girls' basketball team. Plaintiff provides specific details to support her allegations. For example, on May 23, 2021, Plaintiff emailed Mr. Morris confirming the summer schedule she had requested for her team. *Id.* ¶ 39. Mr. Morris did not respond. *Id.* ¶ 42. On May 25, 2021, the Athletic Secretary emailed the coaches, asking them to review the summer schedule. *Id.* ¶ 41. Despite responding to and accommodating the male softball coach's request, Plaintiff's request went ignored. *Id.* On May 26, 2021, after consulting with male coaches, Mr. Morris emailed all the coaches to solicit input on a suggestion to hold weight room sessions for all sports that would be supervised by Coaches Mitchell Brown and Matthew Steinfeldt. *Id.* Plaintiff responded to this email, but again, she was ignored. *Id.*

Plaintiff arranged to host an event with a public charity, the Gold Crown Foundation, and rented the BCHS main gym for a weekend in June of 2021. *Id.* ¶ 44. Plaintiff submitted a request for the main gym months before but learned that Mr. Morris had instead booked the smaller gym

---

[3] The 2020 season was shortened due to the COVID-19 pandemic. ECF 1 ¶ 32, n.3.

for the event. *Id.* Hosting the event was a fundraising opportunity and an opportunity to raise interest in the BCHS girls' basketball program, but Mr. Morris was unsupportive of Plaintiff's efforts. *See id.* ¶ 48. Plaintiff was not notified of the dates booked, and Plaintiff's renewed request to book the main gym were ignored. *Id.* ¶¶ 48-49. Despite the disagreements, the event was hosted in the smaller gym, and Plaintiff was to run the concession stand to fundraise during the event. *Id.* ¶ 51. Plaintiff, however, was not given the key to the concession stand and relied on Mr. Morris's word that he would either unlock the stand for her or provide the key before the tournament. *Id.* Mr. Morris did neither. *Id.* Plaintiff was still able to raise $970 despite Mr. Morris's no-show. *Id.* ¶ 52.

On July 6, 2021, Plaintiff emailed Mr. Morris for guidance because her Junior Varsity coach had resigned, but Plaintiff's email was ignored. *Id.* ¶ 53. Plaintiff sent a follow-up email on September 1, 2021, which Mr. Morris responded to, indicating that he had conducted an exit interview without Plaintiff. *Id.* ¶ 54. Plaintiff asked Mr. Morris about the ordinary protocol for exit interviews and requested to be involved in future exit interviews for her assistant coaches. *Id.* ¶ 55. Mr. Morris initially ignored Plaintiff's question but responded that the exit interview was informal. *Id.* ¶ 56.  In a separate email, Mr. Morris stated that he, as the Athletic Director, could conduct exit interviews without the head coach's involvement. *Id.* Plaintiff alleges that "[t]his was certainly not the case for any of the male coaches" and felt that "Mr. Morris was fed up with her persistently raising issues and inequities that she and her team experienced." *Id.* ¶¶ 57-58.

Between May 25 and August 6, 2021, Plaintiff sent six emails to Mr. Morris proposing changes to the girls' basketball website, but Mr. Morris never provided a substantive response. *Id.* ¶ 61. Plaintiff personally paid for the website changes, which she alleges no other coaches had

done. *Id.* ¶¶ 62-63.

Although the dates are unspecified, Plaintiff further alleges that there were repeated instances of her scheduled gym time being cancelled due to last-minute conflicts and other times where another girls' sports team would be sharing the gym despite not previously being scheduled. *Id.* ¶¶ 66-67. Mr. Morris was managing the gym time schedules. *Id.* ¶ 68.

Additionally, throughout the 2021-2022 basketball season, Plaintiff began to face conflicts with a parent. On the first instance, Plaintiff received an angry call from a parent who told Plaintiff "not to make him go over her head." *Id.* ¶ 72. Plaintiff told Mr. Morris about the call the next day. *Id.* ¶ 73. Plaintiff alleges several instances of the same parent berating her and her assistant coach. *Id.* ¶¶ 74-75; 88; 92.

On January 13, 2022, Plaintiff asked her assistant coach to cover for her during a game while she called her wife regarding a text she received of "bad news." *Id.* ¶ 76. Plaintiff called her wife "for less than a minute" and was then informed her wife had tested positive for COVID-19. *Id.* ¶ 77. On January 21, 2022, Mr. Morris informed Plaintiff that the phone call had been videotaped by an unidentified parent and indicated that "parents had complained about [Plaintiff's] 'demeanor,' but would not explain further what this meant." *Id.* ¶ 79. Plaintiff suspected that the source of the video and complaints was the parent about whom she had previously expressed concerns to Mr. Morris. *Id.* ¶ 80. Plaintiff told Mr. Morris that she believed that the parent was "targeting her because she was openly a lesbian and married to a woman." *Id.* ¶ 83.

On January 28, 2022, Plaintiff again reported her concern about this parent to Mr. Morris "and that she believed it was based on [Plaintiff and her staff's] identities as members in minority communities." *Id.* ¶ 86. On February 4, 2022, Plaintiff reiterated her concerns to Mr. Morris, who

then said he would speak with the parent. *Id.* ¶ 88. On February 7, 2022, Plaintiff and Mr. Morris

met to discuss this parent's behavior, and "Mr. Morris told [Plaintiff] that her 'demeanor' was the

problem, as well as her 'energy on the bench'" and again raised the video recording of Plaintiff

calling her wife. *Id.* ¶ 89. Plaintiff stated her belief that the harassment was based on her sexual

orientation and "expressed that she would continue to live authentically as a member of the

LGBTQIA community and would not hide who she is." *Id.* ¶ 92. On February 9, 2022, the parent

"quickly apologized" to Plaintiff and her staff. *Id.* ¶ 93.

After this string of incidents, a familiar pattern played out: Plaintiff's attempts to schedule

gym time for her team "became futile." *Id.* ¶ 94. On February 28, 2022, Plaintiff confirmed times

for off-season practices, only to find the boys' basketball team already using the space at the

scheduled time. *Id.* Plaintiff sought to resolve the scheduling conflicts, and emailed Mr. Morris,

who indicated that gym availability would prioritize in-season sports. *Id.* ¶ 96. Plaintiff alleged

that she was treated less favorably than the male, heterosexual coaches in scheduling priority.

Specifically, the male, heterosexual boys' basketball coach was scheduled for three days of off-

season gym time, but Plaintiff only received one. *Id.* ¶ 97.

On March 17, 2022, Mr. Morris told Plaintiff "that she would not be returning for another

season and that the girls' basketball program was headed in another direction." *Id.* ¶ 99. The

reasons provided were Plaintiff's failure to fundraise and her "demeanor," upon which Mr. Morris

did not elaborate. *Id.* ¶ 100. Plaintiff alleges that her "fundraising was on par with other girls' and

boys' athletic teams." *Id.* ¶ 103. The Complaint alleges the termination was wrongful gender

discrimination because it was based on sex stereotypes, fundraising is not a stated performance

metric for head coaches, and Plaintiff was held to higher standards than her male, heterosexual

colleagues. *Id.* ¶ 102-105.

In filing the Complaint, Plaintiff alleged five causes of action: (1) gender discrimination under Title IX, (2) sexual orientation discrimination under Title IX, (3) retaliation under Title IX, (4) sex discrimination[4] under Title VII, (5) disability discrimination under the ADA. *See id.* ¶¶ 109-59. Plaintiff named Defendants JeffCo and Zachary Morris, in his official capacity. At issue now is only Plaintiff's Claim Four, sex discrimination in violation of Title VII, against Defendant JeffCo.

### *ERRATUM*

Plaintiff filed the Complaint on August 8, 2024, which was initially assigned to U.S. Magistrate Judge Kathryn A. Starnella. *See* ECF 1; 2. On October 15, 2024, this matter was reassigned to the undersigned. *See* ECF 13. On November 22, 2024, The Parties filed a "Stipulation of Voluntary Dismissal of Claims 1, 2, 3, and 5 With Prejudice," in which the Parties agreed to voluntarily dismiss all claims with prejudice, with the exception of Claim Four against Defendant JeffCo. ECF 17. The Stipulation voluntarily dismissed all claims against Mr. Morris. On December 5, 2024, Defendant then filed an Unopposed Motion to Amend the Caption to remove Mr. Morris as a Defendant, which this Court granted. *See* ECFs 18-20.

Upon reviewing the case docket, this Court must now correct a prior error. The stipulation was not a valid dismissal of less than all claims against Defendant JeffCo. Fed. R. Civ. P. 41(a)(1)(A)(ii) provides for voluntary dismissals of actions but is not a mechanism for dismissing

---

[4] Plaintiff titles this claim for relief "Discrimination on the Basis of Sex and/or National Origin," but the Court construes Claim Four as only asserting sex discrimination because Plaintiff does not mention national origin and states she was born in Wyoming and grew up in Colorado. ECF 1 ¶ 23.

less than all claims against a Party. *See Gobbo Farms & Orchards v. Poole Chemical Co., Inc.*, 81

F.3d 122, 123 (10th Cir. 1996) (Rule 41(a) does not permit dismissal of less than all claims in an

action); *Utah Republican Party v. Cox*, 177 F. Supp. 3d, 1343, 1372 (D. Utah 2016) (Rule 41

permits voluntary dismissal of *actions*, not *claims*). Defendant Morris, however, was properly

dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) because Plaintiff dismissed the entire action

against him. The Court should have granted Plaintiff leave to amend the Complaint, dropping all

but Claim Four against Defendant JeffCo. *See Bustos v. Tower Ins. Co. of New York*, No. 17-cv-

01762-PAB-NYW, 2018 WL 2008840, at *1 (D. Colo. Apr. 30, 2018).

On December 11, 2024, this Court issued a minute order to amend the case caption,

erroneously noting that "the Parties' stipulated dismissal of Plaintiff's Claims 1, 2, 3, and 5 is self-

effectuating." *See* ECF 20. There was never an *order* dismissing Claims 1, 2, 3, and 5 against

Defendant JeffCo, only a note that the dismissal was self-effectuating, which was an incorrect

statement of Rule 41(a)(1)(A)(ii). Accordingly, the Court must also address Claims 1, 2, 3, and 5

against Defendant JeffCo because no proper Order of Dismissal has been issued.

However, this Court also notes Fed. R. Civ. P. 1's instruction to construe rules "to secure

the just, speedy, and inexpensive determination of every action and proceeding." Defendant's

Motion to Dismiss only addresses Claim Four and is ripe for disposition. Considering the Parties'

clear agreement that only Claim Four is at issue, the Court thus construes the Stipulation as an

"unopposed motion to dismiss with prejudice" Claims One, Two, Three, and Five against

Defendant JeffCo. *See, e.g., Harris v. State Farm Mut. Ins. Co.*, No. 20-cv-03195-RM-MEH, 2021

WL 4078914, at *1 (D. Colo. Sept. 8, 2021). Thus, the Court first **recommends** that Claims One,

Two, Three, and Five be **dismissed with prejudice** against Defendant Jeffco because dismissal is

unopposed. *See* ECF 18.

## <u>LEGAL STANDARDS</u>

### I.    Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on the plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit has interpreted this rule to mean that if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

### II.    Fed. R. Civ. P. 12(b)(6)

In addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to

the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [their] complaint," *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012), "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik*, 671 F.3d at 1191 (quoting *Twombly*, 550 U.S. at 555). A court will "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

### I.    Title VII: Discrimination on the basis of sex

Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination may be alleged "through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d

1220, 1226 (10th Cir. 2000) (citations omitted). "Usually, ... a plaintiff will not have direct evidence of discrimination and will establish her claims through circumstantial evidence." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (quoting *Sanders* v. *Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008)). A plaintiff that alleges indirect evidence of discrimination invokes the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Khalik*, 671 F.3d at 1192; *but see Barrett v. Salt Lake Cnty.*, 754 F.3d 864, 867 (10th Cir. 2014) (noting *McDonnell Douglas*'s limited applicability is at summary judgment for claims relying on indirect proof of discrimination). Under this framework, if the plaintiff first establishes a prima facie case of discrimination, then "[t]he burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Khalik*, 671 F.3d at 1192 (citation omitted).

But "the *McDonnell Douglas* burden shifting framework 'does not create a pleading requirement.'" *McNellis*, 116 F.4th at 1137 (quoting *Barrett*, 754 F.3d at 867). A Plaintiff need only "set forth a plausible claim in light of the elements of her claim." *Id.* at 1139 (citations and brackets omitted). Thus, to evaluate whether a discrimination claim relying on circumstantial evidence survives a 12(b)(6) motion to dismiss, the Court considers only the first step of the *McDonnell Douglas* framework: whether a Complaint plausibly states (not establishes) a prima facie case. *See Mormon v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. Dec. 2, 2015) (citation omitted) (unpublished); *see Khalik*, 671 F.3d at 1192 (stating a claim does not require establishing a prima facie case in the complaint).

*Sex Discrimination*

The general elements of a prima facie discrimination claim that must be plausibly pleaded are "(1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination." *McNellis*, 116 F.4th at 1139 (citation modified). However, the articulation of a prima facie case is a flexible standard which "may well vary, depending on the context of the claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citations omitted).

Defendant does not contest that Plaintiff is a member of a protected class or that she suffered an adverse employment action. *See* ECF 19. The Court thus limits its analysis to whether the Complaint pleads indirect discrimination[5] by alleging sufficient facts to make plausible that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination. An inference of discrimination may be proven in various ways, "such as 'actions or remarks made by decisionmakers,' 'preferential treatment given to employees outside the protected class,' or 'more generally, upon the timing or sequence of events leading to plaintiff's termination.'" *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Plotke*, 405 F.3d at 1101).

Plaintiff pleads sufficient facts to demonstrate that her termination "occurred under circumstances which give rise to an inference of unlawful discrimination." *McNellis*, 116 F.4th at 1141 (quoting *Barlow*, 703 F.3d at 505). Taking Plaintiff's alleged facts as true, she came to the

---

[5] Plaintiff has not pleaded evidence of direct discrimination, such as a "[s]tatement showing an existing policy which itself constitutes discrimination" *Heim v. Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993) (citation and internal quotation omitted), or other direct evidence that "proves [the] existence of [a] fact in issue without inference or presumption." *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999) (alterations in original) (citations omitted).

head coaching position at Bear Creek High School as an experienced player and coach. In her first season with the team, she turned around the girls' basketball program. Under her guidance, the team began to win games. ECF 1 ¶ 32. She increased fundraising efforts. *Id.* ¶ 35. She brought passion to the position and emphasized the importance of the players' character. *Id.* ¶ 34. She made long-term plans for the success of the program. *Id.* ¶ 47.

Despite these positive developments, Plaintiff, the only openly LGBT coach at the school, observed preferential treatment by the athletic director toward the heterosexual male coaches during the 2021-22 season. Plaintiff demonstrates this circumstantial evidence of discrimination with specificity:[6] unequal access to the gym and weight room for her team (*id.* ¶¶42-43; ¶ 66), denied access to the main gym for an important event (*id.* ¶ 49), and denial of fundraising opportunities (*id.* ¶¶51-52). Plaintiff was "extremely persistent" and "vocal" in advocating for equal treatment on behalf of her team. *Id.* ¶ 69. Yet her requests were delayed, denied, or ignored, resulting in treatment "worse than her male colleagues." *Id.* ¶ 64. At the end of the season, Plaintiff was discharged. As a result, viewing the facts as true and in a light most favorable to Plaintiff, she has raised an inference of discrimination based on preferential treatment to employees outside of her protected class and the sequence of events leading to her termination following a season in which she alleges persistent discrimination. *See, e.g., Lask v. Kansas City Kansas Cmty. Coll., Bd. of Trs.*, No. 21-cv-02384-HLT-ADM, 2022 WL 22893684, at *2 (D. Kan. Jan. 19, 2022)

---

[6] The Court rejects Defendant's argument that Plaintiff's Complaint is unsupported by sufficient facts. ECF 19 at p. 5 ("Clement alleges no facts that plausibly show she was treated less favorably than other coaches."). Plaintiff's Complaint is replete with specific facts containing dates and the individuals involved. *Compare Drakewyck v. Denver Public Schools*, No. 22-cv-01027-RMR-SKC, 2023 WL 2330686 at *2 (D. Colo. Mar. 2, 2023) (Complaint "does not describe the exact bullying or harassing behavior, provides no specific dates of when the conduct occurred, nor identifies the bully or bullies who engaged in that behavior at any particular time.").

(preferential treatment given to male colleagues such as class scheduling, program changes, and office relocation sufficient to establish inference of discrimination); *cf. Aluru v. Anesthesia Consultants*, 176 F. Supp. 3d 1116, 1127 (D. Colo. 2016) (burden of establishing inference of discrimination at motion for summary judgment stage is "not onerous").

*Wrongful Termination*

In discrimination cases alleging a wrongful termination, alternatively, a Plaintiff may plausibly plead a claim by showing "(1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge." *Perry v. Woodward*, 125 F.3d 1126, 1135 (10th Cir. 1999) (citations omitted); *see Walkingstick Dixon v Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1334 (10th Cir. 2025) (applying *Perry*). Plaintiff's Complaint satisfies the prima facie test articulated in *Perry*.

The second element only requires that "she does not suffer from an absolute or relative lack of qualifications." *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000). As noted above, Plaintiff was an experienced and successful girls' high school basketball coach. ECF 1 ¶¶ 5; 25; 27-26. Plaintiff alleges she was hired "specifically to build the girls' basketball program" after Mr. Marshall's resignation, and she successfully improved the team's performance. *Id.* ¶¶ 30; 32. The Complaint sufficiently alleges that Plaintiff was qualified, and despite these qualifications, Plaintiff was discharged. *See id.* ¶¶ 12; 23-28 (detailing basketball qualifications).

Regarding the fourth factor, Plaintiff was told "that the girls' basketball program was headed in a different direction and that a coaching change was necessary at the time." *Id.* ¶¶ 12;

99. Plaintiff was not told that she was being terminated because the girls' basketball program was being cut. Construing these allegations in Plaintiff's favor, there is a reasonable inference that "a coaching change" meant Plaintiff would be replaced, and the position and program were not eliminated. Meeting these four elements "necessarily raises the inference of discrimination because it is facially illogical for an employer to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement." *Walkingstick Dixon*, 125 F.4th at 1335 (citation and quotations omitted).

*Defendant's Arguments*

Having found that Plaintiff has pleaded a sufficient sex discrimination claim, the Court could recommend denial of Defendant's Motion to Dismiss. Nevertheless, because the Court proceeds by Recommendation, to provide additional information to the district court, this Court specifically addresses Defendant's additional arguments for dismissal.

With the above-stated pleading principles in mind, the Court considers what it interprets as Defendant's three main arguments: (1) the Complaint fails to "plausibly show [Plaintiff] was treated less favorably than other coaches" or that her termination was discriminatory; (2) Defendant's explanation for termination, Plaintiff's demeanor, is not indicative of discrimination, and (2) Plaintiff does not prove that her discharge was pretextual. ECF 19 at pp. 5-6.

### 1) Failure to Demonstrate Less Favorable Treatment

Citing *Khalik*, Defendant notes the fourth element of a discrimination claim as requiring Plaintiff to prove that "she was treated less favorably than others not in the protected class." ECF 19 at p. 5. In arguing that Plaintiff does not allege sufficient facts to identify a comparator, Defendant first argues that Plaintiff fails to identify a male coach who had a similar demeanor,

answered a call during a game, and was rehired. *Id.* at p. 5. The Motion also contends that Plaintiff does not allege specifics to plead similarly situated male employees that were treated differently based on their fundraising efforts. *Id.* at p. 7.

In Plaintiff's Response, she argues that she has provided factual allegations to support that she was treated "less favorably than other male, heterosexual coaches," but she "need not identify a specific coach as a point of comparison." ECF 29 at pp. 2-3. In response to Defendant's arguments about alleging a comparator to prove that fundraising was pretextual, Plaintiff argues that this argument is "misguided as this is not [sic] facts necessary to allege in the complaint, but rather . . . for a motion for summary judgment." *Id.* at p. 4. The Court agrees with Plaintiff.

Pleading a Title VII claim does not require comparison to "similarly situated" persons; in fact, it "do[es] not mandate the pleading of any specific facts in particular' to survive a motion to dismiss." *McNellis*, 116 F.4th at 1141 (first quoting *Khalik*, 671 F.3d at 1194; and then citing *Bekkem v. Willkie*, 915 F.3d 1258, 1274 (10th Cir. 2019)). While establishing discrimination *may* be "satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case." *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (citations omitted). Similarly situated employees "deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of comparable seriousness." *McNellis*, 116 F.4th at 1141 (citation and internal quotations omitted).

Here, Plaintiff alleges that she was "one of two other female head varsity coaches out of fifteen (15) head varsity coaches in BCHS, and the only openly LGBTQ+ coach." ECF 1 ¶ 2.

Plaintiff alleges instances where she was ignored where male coaches were not. *See id.* ¶¶ 39-43. Plaintiff's conclusions that other coaches are "similarly situated" should be disregarded, *see Bekkem*, 915 F.3d at 1275, however, Plaintiff specifically identifies the boys' basketball coach, Mr. Peter Spiessbach, a heterosexual man, who was treated more favorably in at least some respects. For instance, Plaintiff's requests for gym time for the girls' basketball team were denied, but his were not despite both girls' and boys' basketball being off-season. *See id.* ¶¶ 94-97.

Regarding Plaintiff's fundraising efforts, she alleges she was held to a different standard than other coaches, all of whom are heterosexual. *Id.* ¶ 103-104. While taken alone, the statement is conclusory, Plaintiff does allege that she is the only lesbian coach, fundraising is not a stated performance metric, and Plaintiff tried to fundraise. Importantly, Plaintiff' alleges efforts to fundraise for the girls' basketball team that were either dismissed, interfered with, or not supported by Mr. Morris. *See id.* ¶¶ 44-52. Yet Defendant cited fundraising as a reason for termination. *Id.* ¶ 100. An inference of discrimination is plausible, at this stage, when viewing the facts as true and in a light most favorable to Plaintiff because the Defendant's explanation may be "so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *see, e.g., Broil v. Kansas Bureau of Investigation*, No. 24-2029 DDC-RES, 2025 918133 (D. Kan. Mar. 26, 2025) (defendant cited failure to complete program fast enough as reason for termination when defendant refused to review plaintiff's records to verify that she had already completed the program).

### 2) Sex Stereotyping

Defendant's second argument is that Plaintiff's Complaint demonstrates that "demeanor," refers to Plaintiff's coaching ability, not her sex. ECF 19 at p. 5. Defendant argues that the Complaint contradicts a conclusion that "demeanor" is sex stereotyping because Plaintiff was warned that her "energy on the bench" was an issue. *See* ECF 19 at p. 5. However, the Complaint alleges that the "energy on the bench" comment was made over a month before Mr. Morris told Plaintiff she would not be returning and was not cited as a reason. *See* ECF 1 ¶¶ 89; 100. If coaching ability were a problem, it seems this would be directly communicated to Plaintiff, as opposed to opaquely pointing to Plaintiff's "demeanor." Regardless, adopting Defendant's interpretation would require the Court to improperly construe Plaintiff's allegations in its favor at this stage of the litigation, where the Court must view the facts in a light most favorable to Plaintiff.

It is well established that Title VII prohibits employers from discriminating against individuals for "failing to fulfill traditional sex stereotypes." *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). When an employer relies on an employee's failure to conform to stereotypical gender norms in taking an adverse action against the employee, they have discriminated against her on the basis of sex. *See McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 711 (10th Cir. 2012); *e.g., Hopkins*, 490 U.S. at 256. Here, Plaintiff was discharged because of her "demeanor," which Plaintiff sufficiently connects to complaints made by parents to show that Defendant relied on the characterization in taking the adverse action. ECF 1 ¶ 8. Although Plaintiff does not allege what demeanor was the subject of the complaints, i.e., which non-conforming behaviors or personality traits were targeted, Plaintiff alleges she was not given an answer. *See id.* ¶¶ 79; 89; 100. The Court considers the information

that Plaintiff could know before discovery: she does not conform to traditional gender norms, and she was discharged because of "demeanor" without further elaboration. *Id.* ¶¶ 8-9. An employee who believes she was discriminatorily discharged should not be precluded from pursuing her Title VII claims simply because the employer terminates her in insinuations and obscures an explanation that may very well indicate sex stereotyping. Indeed, proving "pretext" is not Plaintiff's burden at this posture. *See Wooley v. Indigo Ag, Inc.*, No. 21-cv-00240-CMA-KLM, 2022 WL 4365982, at *3 (D. Colo. Sept. 21, 2022) (rejecting defendant's argument that some facts undermined allegations establishing a plausible age discrimination claim and finding "[t]he Court need not weigh countervailing evidence at this stage to determine whether the claim is likely to succeed."); *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. Dec. 2, 2015) (first step of *McDonnell Douglas* framework is relevant to 12(b)(6) analysis) (unpublished).

### 3) **Pretext**

Defendant's last argument is that Plaintiff does not plead facts to establish that the "legitimate, non-discriminatory basis" for her termination was pretextual. ECF 19 at p. 6. Defendant refers to evidentiary standards inapplicable the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement."); *see Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (court's function on a 12(b)(6) motion is to assess whether the complaint states a plausible claim, not to weigh evidence that may be submitted). Defendant points to no relevant case law to support this argument, so dismissal on this basis is inappropriate.[7]

---

[7] Defendant cites three cases, none of which are applicable in the 12(b)(6) context. *See* ECF 19 at p. 6. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000), is a post-trial appeal, a posture in which *McDonnell Douglas* does not apply. *Bryant v. Farmers Ins. Exch.*, 432

*See Kennedy v. Regents of Univ. of Colorado*, No. 18-cv-02245-PAB-SKC, 2019 WL 4751764, at

*4 (D. Colo. Sept. 30. 2019) (finding it inappropriate to evaluate pretext at the motion to dismiss

stage) (citations omitted).

## CONCLUSION

For the reasons stated above, Plaintiff has pleaded a prima facie case of discrimination on

the basis of sex—either based on sex or sexual orientation.

This Court **RECOMMENDS**[8] that Defendant's Motion to Dismiss [ECF 19] be

**DENIED**. To the extent necessary, the Court also **RECOMMENDS** that Claims One,

Two, Three, and Five be **DISMISSED WITH PREJUDICE** against Defendant JeffCo.

---

F.3d 1127 (10th Cir. 2005) and *Sydney v. ConMed Elec. Surgery*, 275 F. App'x 748, 753 (10th Cir. 2008) are both appeals on motions for summary judgments.

[8] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

DATED at Denver, Colorado, this 25th day of August, 2025.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge